# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In Re:**

PAUL S. PENLAND and
LESLIE D. PENLAND,

**Debtors.**

**Bankruptcy Case
No. 05-00172**

_____

### MEMORANDUM OF DECISION
_____

Debtors have appealed this Court's order denying confirmation of their proposed Chapter 13 plan and dismissing their case entered on November 8, 2005. *See* Docket Nos. 62 and 64. On November 22, 2005, Debtors filed a Motion for Stay Pending Appeal. Docket No. 66. The Court determines that, under these unusual circumstances,[1] no hearing or additional argument concerning Debtors' motion is required or would be helpful to the Court to dispose of this

---

[1] There were no objections to confirmation of Debtors' plan, nor did any party in interest seek dismissal. Rather, the Court denied confirmation and dismissed the case on its own motion in discharging its independent duty to review whether a proposed plan complies with the "good faith" confirmation standard of § 1325(a)(3). *In re Warren*, 89 B.R. 87, 90 (9th Cir. BAP 1988). The Chapter 13 trustee is the sole other interested party listed in Debtors' notice of appeal and only party served with Debtors' motion for a stay. Since the trustee did not oppose confirmation, the Court presumes he will also not actively participate in the appeal nor oppose the motion.

MEMORANDUM OF DECISION - 1

motion.

Debtors seek a stay pending appeal under Fed. R. Bankr. P. 8005. In order to obtain a stay pending appeal in this circuit, Debtors as appellants must show a likelihood of success on the merits; the potential for irreparable injury if a stay is not granted; that no substantial harm will come to others if a stay is issued; and that the stay will not harm the public interest. *In re Wymer*, 5 B.R. 802, 806 (9th Cir. BAP 1980). The bankruptcy court may exercise discretion whether to grant a stay pending appeal. *Id.*

After due consideration, the Court declines to grant Debtors' motion. While issuance of a stay under these facts will not likely result in harm to any public interest, Debtors have failed to show they meet the other requirements for a stay.

**1. Likelihood of Success on Appeal.**

A bankruptcy court's decision whether to confirm a Chapter 13 plan is reviewed for abuse of discretion. *In re Slade*, 15 B.R. 910, 911 (9th Cir. BAP 1981). So, too, is its decision to dismiss a Chapter 13 case. *Leavitt v. Soto* (*In re Leavitt*), 171 F.3d 1219, 1223 (9th Cir. 1999). Such decisions entail a fact-specific, case-by-case analysis. *In re Porter*, 102 B.R. 773, 775 (9th Cir. BAP 1989). Debtors bear the burden of establishing their plan is proposed in good faith,

MEMORANDUM OF DECISION - 2

*Smyrnos v. Padilla* (*In re Padilla*), 213 B.R. 349, 352 (9th Cir. BAP 1997), and whether they have done so is a question of fact. *Id.* (citing *In re Metz*, 820 F.2d 1495, 1497 (9th Cir. 1987)). A bankruptcy court's findings of fact may not be set aside on appeal unless they are clearly erroneous. Fed. R. Bankr. P. 8013.

In this case, the Court decided that Debtors failed to satisfy their burden of proving their plan was proposed in good faith as required by § 1325(a)(3). While Debtors argue they will succeed in obtaining a reversal of the Court's order denying confirmation and dismissing this case, the Court respectfully disagrees that its finding constitutes clear error.

The Memorandum of Decision explaining the reasons for the Court's order, Docket No. 61, details a long list of factors that collectively persuaded the Court that Debtors' plan was not proposed in good faith. These factors included: Debtors' questionable conduct in conducting their bankruptcy case;[2] Debtors' agreement to allow Mrs. Penland's parents to reside with Debtors rent-free without any apparent financial justification for this arrangement; Debtors' excessive

---

[2] Debtors originally sought Chapter 7 relief. They converted their case to a Chapter 13 case only after the Court and U.S. Trustee expressed interest in whether the case should be dismissed for substantial abuse under 11 U.S.C. § 707(b), and on the eve of their Rule 2004 exams. Debtors filed three proposed plans, the first proposing a meager $300 per month for their creditors. After several months and considerable prodding by the trustee, Debtors eventually increased the proposed payment to $1,025 per month, still a modest amount in light of Debtors' $120,000 + per year income.

MEMORANDUM OF DECISION - 3

monthly expenditures for their large house and life insurance;[3] Mr. Penland's failure to offer realistic projections concerning his potential future income; and Debtors' failure to even inquire about the availability of their $500,000 in vested pension funds to deal with their debts. Mem. of Decision at 12-19, Docket No. 61. Upon consideration of these and other factors constituting the "totality of the circumstances," *see In re Warren,* 89 B.R. 87, 93 (9th Cir. BAP 1988), the Court concluded that Debtors' proposal to spend over $60,000 of their $120,000 annual income each year on living expenses, while paying their creditors about $12,000 per year for five years, did not amount to good faith.

The exercise of discretion in deciding whether to confirm Chapter 13 plans under the amorphous "good faith" standard is hardly science. The Court acknowledges that perhaps the members of a reviewing court, if called upon to decide the issues under these facts, would assign different weight to the factors

---

[3] Debtors' motion correctly points out that one of the cases cited by the Court in its decision, *In re Smith*, 95 I.B.C.R. 194 (Bankr. D.Idaho 1995) was vacated by the BAP on appeal. *Smith v. Spurgeon* (*In re Smith*), 207 B.R. 888 (9th Cir. BAP 1996). The Court regrets this oversight. In *Smith*, the BAP determined it was an error when this Court adopted a "blanket rule" that life insurance premiums are not necessary expenses in a Chapter 13 case. 207 B.R. at 889-890. Instead, the BAP decided that whether such premiums constitute a necessary expense "must be determined on a case-by-case basis." *Id*. at 890. Of course, that is exactly what the Court did in this case. In light of Debtors' other resources, most notably the amounts on deposit in their retirement accounts, the Court decided it was not necessary that Debtors maintain significant life insurance coverage. *See* Mem. of Decision at 18.

MEMORANDUM OF DECISION - 4

upon which this Court based its decision, and perhaps disagree with the Court's conclusions. But, as the Court understands the standard, in order to find abuse of discretion, the reviewing court must conclude that the trial court based its decision on an incorrect legal standard, a clearly erroneous view of the facts, or that its ruling leaves the reviewing court with a definite and firm conviction that there has been a clear error of judgment. *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001); *Ho v. Dowell* (*In re Ho*), 274 B.R. 867, 871 (9th Cir. BAP 2002). Under this deferential standard of review, the Court concludes that Debtors have not shown they will likely be successful on appeal.

While they did not raise them previously, Debtors now also make generalized "due process" arguments about the Court's decision. They contend that they were somehow blind-sided by the Court's determination that good faith was an issue in this case, and that they were unfairly deprived of the opportunity to file yet another amended plan when the Court decided not to confirm the current plan. A careful review of the record shows these arguments lack merit. Debtors filed three plans and three confirmation hearings were conducted in this case. At the second hearing, the Court advised Debtors that the third hearing would be an evidentiary hearing concerning confirmation, and also would likely be Debtors' final opportunity to get their proposed plan confirmed. Debtors and their counsel

MEMORANDUM OF DECISION - 5

appeared at the third hearing fully prepared. Indeed, by that time, there were no issues concerning confirmation of the plan other than good faith. Both Debtors testified. At the conclusion of the evidentiary hearing, Debtors were invited to, and then did, file a Second Amended plan and an amended Schedule J, both of which were considered by the Court.

In short, Debtors had an ample opportunity to make their best case for confirmation. They were unsuccessful, and in light of the Court's decision, no purpose would have been served in allowing them yet another bite at the confirmation apple.

### 2. Irreparable Injury.

Debtors allege in their motion that unless a stay is granted, "Creditors *may* obtain judgments, garnish wages and disrupt the [Debtors'] cash flow so that they are not able to pay their current living expenses and current mortgage payments." Motion for Stay at 5-6, Docket No. 66 (emphasis added). Significantly, no evidence was presented by Debtors, either at the confirmation hearing or since, that they are facing any imminent threat of aggressive creditor collection activities. No foreclosures were pending when the case was dismissed; indeed, Debtors were current on their mortgage payments.[4] Debtors have no other

---

[4] A significant portion of the mortgage debt is owed to Mrs. Penland's parents, the Derrs. Debtors testified at the confirmation hearing that the parents had agreed to

MEMORANDUM OF DECISION - 6

significant secured debt, and owe no substantial tax obligations.  Any allegations that Debtors face irreparable injury in the absence of a stay are, at this time, speculative.

### 3.  Harm to Others.

If the Court stays the order denying confirmation of Debtors' plan and dismissing the case,  a strange circumstance will result.   Debtors will have the continuing benefit of the automatic stay, and their unsecured creditors will be prevented from collecting during the time required to appeal this case to the BAP and beyond.  While under § 1326(a), Debtors presumably must continue to make payments to the Chapter 13 trustee, that money will simply accumulate in his trust account, since confirmation is a condition of the trustee's ability to make disbursements under § 1326(b).  And if Debtors tire of this arrangement, they have the right to dismiss their case under § 1307(a) "at any time," and reclaim all payments from what amounts to a court-protected savings account.

This arrangement seems grossly unfair to creditors, and the Court declines to tip the scales in Debtors' favor to such an extent.  In the absence of a stay, Debtors can use their ample monthly income to make at least partial

---

forego current payments while Debtors were attempting to reorganize under Chapter 13. This means Debtors will have access to over $600 per month in additional cash flow to deal with other creditors, assuming those creditors pursue collection.

MEMORANDUM OF DECISION - 7

payments to creditors should the need arise.

### 4. Conclusion.

For the reasons stated above, Debtors' Motion for Stay Pending Appeal will be denied by separate order.

Dated: December 1, 2005

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 8